UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

CYNTHIA S.,

                Plaintiff,

    -v-

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.

_____

20-CV-07034-MJR
DECISION AND ORDER

      Pursuant to 28 U.S.C. §636(c), the parties consented to have a United States Magistrate Judge conduct all proceedings in this case. (Dkt. No. 14)

      Plaintiff Cynthia S.[1] ("Plaintiff") brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner" or "defendant") denying her application for Disability Insurance Benefits ("DIB") pursuant to the Social Security Act (the "Act"). Both parties have moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the following reasons, Plaintiff's motion (Dkt. No. 10) is denied, and defendant's motion (Dkt. No. 12) is granted.

_____

[1] In accordance with the District's November 18, 2020, Standing Order, plaintiff is identified by first name and last initial.

## BACKGROUND[2]

Plaintiff filed for DIB on April 11, 2018, alleging an onset date of January 1, 2014. (Administrative Transcript ["Tr."] 12, 152-58).  The application was initially denied on June 18, 2018.  (Tr. 12, 78-83).  Plaintiff timely filed a request for an administrative hearing. (Tr. 84-102).  On October 25, 2019, Administrative Law Judge ("ALJ") David Romeo held a video hearing from Syracuse, New York.  (Tr. 28-61).  Plaintiff appeared in Horseheads, New York, with counsel.  A vocational expert also appeared and testified at the hearing. The ALJ issued an unfavorable decision on December 3, 2019.  (Tr. 9-27).  On October 13, 2020, the Appeals Council denied Plaintiff's request for review.  (Tr. 1-6).  This action followed.

## DISCUSSION

I.    *Scope of Judicial Review*

The Court's review of the Commissioner's decision is deferential.  Under the Act, the Commissioner's factual determinations "shall be conclusive" so long as they are "supported by substantial evidence," 42 U.S.C. §405(g), that is, supported by "such relevant evidence as a reasonable mind might accept as adequate to support [the] conclusion," *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks and citation omitted).  "The substantial evidence test applies not only to findings on basic evidentiary facts, but also to inferences and conclusions drawn from the facts."  *Smith v. Colvin*, 17 F. Supp. 3d 260, 264 (W.D.N.Y. 2014).  "Where the Commissioner's decision

---

[2] The Court presumes the parties' familiarity with Plaintiff's medical history, which is summarized in the moving papers.

rests on adequate findings supported by evidence having rational probative force," the Court may "not substitute [its] judgment for that of the Commissioner." *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002). Thus, the Court's task is to ask "'whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached' by the Commissioner." *Silvers v. Colvin*, 67 F. Supp. 3d 570, 574 (W.D.N.Y. 2014) (quoting *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)).

Two related rules follow from the Act's standard of review. The first is that "[i]t is the function of the [Commissioner], not [the Court], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983). The second rule is that "[g]enuine conflicts in the medical evidence are for the Commissioner to resolve." *Veino*, 312 F.3d at 588. While the applicable standard of review is deferential, this does not mean that the Commissioner's decision is presumptively correct. The Commissioner's decision is, as described above, subject to remand or reversal if the factual conclusions on which it is based are not supported by substantial evidence. Further, the Commissioner's factual conclusions must be applied to the correct legal standard. *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008). Failure to apply the correct legal standard is reversible error. *Id.*

II.    *Standards for Determining "Disability" Under the Act*

A "disability" is an inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 42 U.S.C. §§423(d)(1)(A), 1382c(a)(3)(A). The Commissioner may find the claimant disabled "only if his physical or mental impairment

or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." *Id.* §§423(d)(2)(A), 1382c(a)(3)(B). The Commissioner must make these determinations based on "objective medical facts, diagnoses or medical opinions based on these facts, subjective evidence of pain or disability, and . . . [the claimant's] educational background, age, and work experience." *Dumas v. Schweiker*, 712 F.2d 1545, 1550 (2d Cir. 1983) (first alteration in original) (quoting *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981)).

To guide the assessment of whether a claimant is disabled, the Commissioner has promulgated a "five-step sequential evaluation process." 20 C.F.R. §§404.1520(a)(4), 416.920(a)(4). First, the Commissioner determines whether the claimant is "working" and whether that work "is substantial gainful activity." *Id.* §§404.1520(b), 416.920(b). If the claimant is engaged in substantial gainful activity, the claimant is "not disabled regardless of [his or her] medical condition or . . . age, education, and work experience." *Id.* §§404.1520(b), 416.920(b). Second, if the claimant is not engaged in substantial gainful activity, the Commissioner asks whether the claimant has a "severe impairment." *Id.* §§404.1520(c), 416.920(c). To make this determination, the Commissioner asks whether the claimant has "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." *Id.* §§404.1520(c), 416.920(c). As with the first step, if the claimant does not have a severe impairment, he or she is not disabled regardless of any other factors or considerations. *Id.*

§§404.1520(c), 416.920(c).   Third, if the claimant does have a severe impairment, the Commissioner asks two additional questions:  first, whether that severe impairment meets the Act's duration requirement, and second, whether the severe impairment is either listed in Appendix 1 of the Commissioner's regulations or is "equal to" an impairment listed in Appendix 1.   *Id.* §§404.1520(d), 416.920(d).   If the claimant satisfies both requirements of step three, the Commissioner will find that he or she is disabled without regard to his or her age, education, and work experience.  *Id.* §§404.1520(d), 416.920(d).

If the claimant does not have the severe impairment required by step three, the Commissioner's analysis proceeds to steps four and five.   Before doing so, the Commissioner must "assess and make a finding about [the claimant's] residual functional capacity ["RFC"] based on all the relevant medical and other evidence" in the record.  *Id.* §§404.1520(e), 416.920(e).   RFC "is the most [the claimant] can still do despite [his or her] limitations."  *Id.* §§404.1545(a)(1), 416.945(a)(1).   The Commissioner's assessment of the claimant's RFC is then applied at steps four and five.   At step four, the Commissioner "compare[s] [the] residual functional capacity assessment . . . with the physical and mental demands of [the claimant's] past relevant work."  *Id.* §§404.1520(f), 416.920(f).   If, based on that comparison, the claimant is able to perform his or her past relevant work, the Commissioner will find that the claimant is not disabled within the meaning of the Act.  *Id.* §§404.1520(f), 416.920(f).   Finally, if the claimant cannot perform his or her past relevant work or does not have any past relevant work, then at the fifth step the Commissioner considers whether, based on the claimant's RFC, age, education, and work experience, the claimant "can make an adjustment to other work."   *Id.* §§404.1520(g)(1), 416.920(g)(1).   If the claimant can adjust to other work, he or she is

not disabled.  *Id.* §§404.1520(g)(1), 416.920(g)(1).  If, however, the claimant cannot adjust to other work, he or she is disabled within the meaning of the Act.  *Id.* §§404.1520(g)(1), 416.920(g)(1).

The burden through steps one through four described above rests on the claimant. If the claimant carries his burden through the first four steps, "the burden then shifts to the [Commissioner] to show there is other gainful work in the national economy which the claimant could perform."  *Carroll*, 705 F.2d at 642.

III.    *The ALJ's Decision*

Initially, the ALJ determined that Plaintiff met the insured status requirements of the Act through March 31, 2019.  At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity from her alleged onset date of January 1, 2014, through her date last insured of March 31, 2019.  (Tr. 15).  At step two, the ALJ found that Plaintiff had the following severe impairments: post-traumatic stress disorder; general anxiety disorder; panic disorder without agoraphobia; and depression.  (Tr. 15).  At step three, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (Tr. 15-17).  Prior to proceeding to step four, the ALJ determined that Plaintiff had the following RFC during the relevant period:

> [C]laimant had the [RFC] to perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant is able to tolerate occasional interaction with coworkers and supervisors, and no interaction with the public; the claimant is able to tolerate occasional changes in work setting; the claimant is able to tolerate a low level of work pressure defined as work not requiring multitasking, very detailed job tasks, significant independent judgment, very short deadlines, teamwork in completing job tasks.

(Tr. 17-20).

At step four, the ALJ found that through the date last insured, Plaintiff was unable to perform any past relevant work.  (Tr. 20). At step five, the ALJ found that through the date last insured, that there existed jobs in significant numbers in the national economy that Plaintiff could have performed. (Tr. 20-21). Therefore, the ALJ found that Plaintiff was not disabled from January 1, 2014, the alleged onset date, through March 31, 2019, the date last insured. (Tr. 21).

IV.    *Plaintiff's Challenge*

Plaintiff argues that the case must be remanded because the ALJ improperly rejected the treating physician medical opinions in favor of the consulting medical opinions and engaged in "cherry picking" of the medical evidence in formulating the Plaintiff's RFC.  The Court disagrees.

After reviewing the medical and non-medical evidence of record, the ALJ determined that Plaintiff had the RFC to perform a range of work with limited social interaction, occasional changes in the work setting, and low level of work pressure. (Tr. 17-20). While Plaintiff, in essence, argues that the evidence of record could have been considered differently, her arguments are unavailing. Under the deferential standard of review, the Commissioner's findings of fact must be upheld unless "a reasonable factfinder would *have to conclude otherwise.*" *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (emphasis in original).

The RFC assessment is a legal determination for which the ALJ is responsible as trier of fact. 20 C.F.R. § 404.1546(c). Importantly, Plaintiff had the burden of presenting evidence that she was incapable of performing substantial gainful activity. 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. §§ 404.1512(c), 404.1545(a)(3); *Bowen v. Yuckert*, 482 U.S. 137,

146 n.5 (1987) ("It is not unreasonable to require the claimant, who is in a better position to provide information about [his] medical condition, to do so").

"[A]n RFC finding is administrative in nature, not medical, and its determination is within the province of the ALJ." *Curry v. Comm'r of Soc. Sec.*, 855 F. App'x 46, 48 n.3 (2d Cir. 2021) (citation omitted). In making the RFC determination, the ALJ must consider all relevant medical and other evidence, including any statements about what the claimant can still do provided by any medical sources. *See* 20 C.F.R. §§ 404.1545(a)(3), 404.1546(c). Furthermore, it is within the ALJ's discretion to resolve genuine conflicts in the evidence. *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002); *Schaal v. Apfel*, 134 F.3d 496, 504 (2d Cir. 1998) ("It is for the SSA, and not this court, to weigh the conflicting evidence in the record"); *see also Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 122 (2d Cir. 2012) ("In our review, we defer to the Commissioner's resolution of conflicting evidence.").

In this case, the ALJ's determination that Plaintiff could perform a range of work with limited social interaction and low work pressure reflected a thorough consideration of all of Plaintiff's medically determinable impairments, taking into account her medical and other records and her subjective allegations regarding her symptoms and the extent of her limitations. (Tr. 17-20). Substantial evidence, including consultative examiner Dr. Stephen Farmer's examination findings and opinion, State agency psychologist Dr. E. Kamin's prior administrative medical finding, and Plaintiff's course of treatment, mental status findings, and range of activities, supports the ALJ's finding. (Tr. 17-20).

Notably, as the ALJ discussed, following a comprehensive examination, Dr. Farmer assessed that Plaintiff did not have any limitations in her ability to understand,

remember, or apply simple and complex directions and instructions; use reason and judgment to make work-related decisions; maintain personal hygiene; and have awareness of normal hazards and taking appropriate precautions. (Tr. 19, *referring to* Tr. 437-38). She had mild limitations in her ability to sustain concentration and perform a task at a consistent pace, and mild-to-moderate limitations sustaining an ordinary routine and regular attendance at work. (Tr. 437). Dr. Farmer found that Plaintiff had moderate limitations in her ability to interact adequately with supervisors, co-workers, and the public; and in her ability to regulate emptions, control behavior, and maintain well-being. (Tr. 437). Dr. Farmer concluded that the results of his examination were consistent with psychiatric problems, but Plaintiff's problems did not appear to be significant enough to interfere with her ability to function on a daily basis. (Tr. 438).

The ALJ also considered that during his examination, Dr. Farmer observed that Plaintiff was friendly and cooperative, and her manner of relating was adequate. (Tr. 18; *see* Tr. 436). She exhibited intact attention and concentration, and intact recent and remote memory skills. (Tr. 437). Her thought processes were coherent and goal directed. (Tr. 436). Her mood was somewhat anxious, and her affect was full range and appropriate in speech and thought content. (Tr. 436). Additionally, Dr. Farmer assessed that Plaintiff's cognitive functioning was in the average to above-average range. (Tr. 437).

Moreover, the ALJ also considered that Dr. Kamin reviewed the record including Plaintiff's mental health and primary care treatment records and Dr. Farmer's examination, and assessed that Plaintiff did not have any limitations in her ability to understand, remember, or apply information. (Tr. 19; *see* Tr. 70-74). Additionally, Dr. Kamin assessed that Plaintiff had only mild limitations in her ability to interact with others,

concentrate, persist, or maintain pace, and adapt or manage herself. (Tr. 73). The ALJ found that Dr. Kamin's opinion was partially persuasive, as other evidence of record, including Dr. Farmer's opinion, supported more significant mental limitations. (Tr. 19); *see* 20 C.F.R. § 404.1520c(c)(2) (consistency factor). Nonetheless, Dr. Kamin's assessment supports that Plaintiff could, at minimum, perform the range of work that the ALJ found that Plaintiff could perform. *See* 20 C.F.R. § 404.1513a ("State agency medical or psychological consultants are highly qualified and experts in Social Security disability evaluation").

In addition, the ALJ considered Plaintiff's mental health treatment records in evaluating her functioning, which also support the ALJ's RFC finding that Plaintiff could perform a range of work with limited social interaction and low work pressure. (Tr. 18). As the ALJ discussed, Plaintiff's own providers noted that she was alert, cooperative, and in no distress. (Tr. 18; *see* Tr. 246, 251-52, 257-58, 264, 288, 378, 409, 449, 457, 470, 474, 498, 506, 510, 1064). The ALJ also noted that there were times when Plaintiff's providers indicated that she had normal (euthymic) mood and appropriate affect. (Tr. 18; *see* Tr. 457, 516, 522, 526, 529). Additionally, Plaintiff's examining providers frequently found that she had normal attention and concentration, and recent and remote memory, which further supported the ALJ's finding that Plaintiff was capable of a range of work. (Tr. 292, 296, 307, 323, 327, 331, 457, 461, 465, 470, 474, 478, 482, 486, 490, 494, 498, 502, 506, 510, 513, 516, 522, 526, 529).

Moreover, Plaintiff's reported abilities and activities also supported the ALJ's assessment. (Tr. 18); *see, e.g., Cichocki v. Astrue*, 729 F.3d 172, 178 (2d Cir. 2013) (the ALJ properly considered the claimant's reported daily activities, such as walking her dog

and cleaning her house, in support of the RFC finding). As the ALJ considered, Plaintiff provided childcare for her own five children, and at times, babysat for other children as well during the period at issue. (Tr. 18; *see* Tr. 199, 328, 332, 500). Plaintiff also cared for her family's pets, including feeding, bathing, playing with and caring for them. (Tr. 18; *see* Tr. 199). The ALJ further considered that despite her impairments, Plaintiff was able to cook all meals for her family, clean her home, do laundry, and garden. (Tr. 16, 18; *see* Tr. 200-02, 437). Plaintiff reported that she could follow written and verbal instructions, and did not need reminders to take medications. Tr. 15, 18; *see* Tr. 200, 205. The ALJ also observed that Plaintiff drove a car, cooked, baked, and managed money, which required concentration, and also shopped in stores and took public transportation, which required interaction with others. (Tr. 18; *see* Tr. 200-02).

In addition, Plaintiff mentioned several times that she was interested in expanding her babysitting work, and opening an in-home daycare on the property of her new home. Tr. 476, 527. She also worked part-time as a cake decorator at Tops supermarket for several months during the period at issue, attended her child's soccer games, and enrolled in community college in August 2019. (Tr. 35, 307, 311, 314, 347, 447, 530). Plaintiff's activities and reported abilities further support the ALJ's finding that Plaintiff was capable of performing a range of work.

To the extent that Plaintiff's primary care provider Dr. G. Wittig and mental health counselor Sylvia Bryant found that Plaintiff had greater mental limitations, the ALJ found that their opinions were not persuasive, as they were inconsistent with the overall medical record, as outlined above. (Tr. 19; *see* Tr. 534-39, 1364-69); *see* 20 C.F.R. § 404.1520c(c)(2) (consistency factor). In making this finding, the ALJ concluded that they

significantly conflicted with other evidence of record, including Plaintiff's treatment history and activities, and were not supported by Plaintiff's treatment notes. (Tr. 19). The ALJ also noted that Dr. Wittig did not provide any support for his notation that Plaintiff would be off-task more than 30 percent of the day, and that this estimate conflicted with Plaintiff's ability to perform a range of activities, including caring for her five children. (Tr. 19; *see* Tr. 1368); 20 C.F.R. § 404.1520c(c)(1),(2) (consistency and supportability factors).

While Plaintiff challenges the ALJ's consideration of Dr. Wittig and Ms. Bryant's opinions, she does not identify any error in the ALJ's analysis. Instead, Plaintiff's argument amounts to an invitation to the court to reevaluate the evidence, which is at odds with the deferential standard of review. *See Krull v. Colvin*, 669 F. App'x 31, 32 (2d. Cir. 2016) ("Krull's disagreement is with the ALJ's [evaluation] of the evidence, but the deferential standard of review prevents us from re[evaluating] it.").

For instance, Plaintiff notes that while the ALJ found Dr. Wittig and Ms. Bryant's assessments conflicted with Plaintiff's mental health treatment and activities, the ALJ did not enumerate Plaintiff's activities and mental health treatment in this portion of the decision. However, Plaintiff omits that the ALJ listed those activities and mental treatment findings in detail on the previous page of the decision, and clearly explained his evaluation of both. (Tr. 18, *referring to* Tr. 199-202, 205, 328, 437 (activities); 246-47, 251, 288, 378, 409, 449, 457, 470, 474, 506, 510, 1064 (mental status findings)); *see Cichocki*, 729 F.3d at 177 (explaining that remand is only warranted when the reviewing court is "unable to fathom the ALJ's rationale in relation to evidence in the record . . ."); *Berry v. Schweiker*, 675 F.2d 464, 468 (2d Cir. 1982) (noting that the court may look to other parts of the ALJ's

decision and to other credible evidence to determine whether the ALJ's decision is supported by substantial evidence).

Furthermore, contrary to Plaintiff's assertion, the ALJ considered that Dr. Wittig did not provide a rationale supporting the off-task limitation he assessed, which is relevant to supportability. (Tr. 19); *see* 20 C.F.R. § 404.1520c(c)(1). Moreover, as the ALJ's consideration of the medical and other evidence is evident, any error is not further discussing the supportability of Dr. Wittig and Ms. Bryant's opinions is harmless. (Tr. 17-20); *see Michael H. v. Comm'r of Soc. Sec.*, 20-CV-1466-DB, 2022 WL 768658, at *11 (W.D.N.Y. Mar. 14, 2022) (finding that failure to discuss supportability of opinion was harmless where the court could glean the rationale of the ALJ's decision).

While Plaintiff argues that the ALJ did not specifically note certain abnormal mental status findings, including that her mood and affect were anxious and depressed during several visits, this is undisputed. The ALJ expressly found that anxiety and depression were severe medically determinable impairments. (Tr. 15); *see Brault*, 683 F.3d at 448 ("an ALJ does not have to state on the record every reason justifying a decision. . . . An ALJ's failure to cite specific evidence does not indicate that such evidence was not considered.); *see also Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981) (an ALJ is not required "explicitly to reconcile every conflicting shred of medical testimony"). However, at the same time, the ALJ found that despite these impairments, on the whole, Plaintiff exhibited many normal mental status findings during her mental health treatment visits, including cooperative behavior, normal memory, attention and concentration. (*See* Tr. 292, 296, 307, 323, 327, 331, 457, 461, 465, 470, 474, 478, 482, 486, 490, 494, 498, 502,

506, 510, 513, 516, 522, 526, 529); *Veino*, 312 F. 3d at 588 (stating that "genuine conflicts in the medical evidence are for the Commissioner to resolve").

Plaintiff ignores all of the evidence cited throughout the ALJ's opinion and clearly evidenced in the record, which showed that Plaintiff engaged in a range of activities during the relevant period and had many normal mental status findings, and instead, argues that other evidence could be evaluated differently. However, this argument is unavailing. As discussed, substantial evidence, including the assessments of Dr. Farmer and Dr. Kamin that Plaintiff had moderate mental limitations, at most, supported the ALJ's decision. (Tr. 17-20; *see* Tr. 437-38); *Zabala v. Astrue*, 595 F.3d 402, 410 (2d Cir. 2010) ("None of the clinicians who examined her indicated that she had anything more than moderate limitations in her work-related functioning . . . ."). Indeed, it is well-established that the assessments of consultative and State agency psychologists, such as Dr. Farmer and Dr. Kamin, may constitute substantial evidence in support of an ALJ's decision. *See Mongeur v. Heckler*, 722 F.2d 1033, 1039 (2d Cir. 1983); *see also Guerra v. Saul*, 778 F. App'x 75, 77 (2d Cir. 2019) (consulting psychologist's opinion supported ALJ's decision); *Rusin v. Berryhill*, 726 F. App'x 837, 840 (2d Cir. 2018) (State agency psychological consultant's assessment supported RFC determination); *Perry v. Berryhill*, 711 F. App'x 9, 10 (2d Cir. 2017) (State agency psychological consultant assessment supported RFC determination); *Woodmancy v. Colvin*, 577 F. App'x 72, 75 (2d Cir. 2014) (consulting psychologist's opinion supported ALJ's decision).

While Plaintiff might disagree with the ALJ's evaluation of the medical evidence, under the deferential standard of review, the Commissioner's findings of fact must be upheld unless "a reasonable factfinder would *have to conclude otherwise*." *Brault*, 683

F.3d at 448 (emphasis in original). The substantial evidence standard contemplates deference to an ALJ's evaluation of conflicting evidence. *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154, 1157 (2019). The question is not whether there is substantial evidence to support the claimant's position, but whether there is substantial evidence to support the ALJ's decision. *Bonet ex rel. T.B. v. Colvin*, 523 F. App'x 58, 59 (2d Cir. 2013). Here, substantial evidence supports the ALJ's decision. Therefore, because the ALJ properly considered the medical opinion and other evidence of record, his evaluation of Plaintiff's impairments and their associated limitations is entitled to deference. (Tr. 17-20).

## CONCLUSION

For the above reasons, Plaintiff's motion for judgment on the pleadings (Dkt. No. 10) is denied and defendant's motion for judgment on the pleadings (Dkt. No.12) is granted.

The Clerk of Court shall take all steps necessary to close this case.

**SO ORDERED.**

Dated:     February 27, 2023
           Buffalo, New York

MICHAEL J. ROEMER
United States Magistrate Judge